IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS

| | | |
|---|---|---|
| In re: | ) | Case No. 25-53781 |
| | ) | |
| EAST OHIO HOSPITAL LLC | ) | Chapter 7 (Involuntary) |
| | ) | |
| Debtor. | ) | Judge Cobb |
| | ) | |

**UNITED STATES TRUSTEE'S MOTION FOR ORDER DETERMINING DEBTOR IS NOT A HEALTH CARE BUSINESS PURSUANT TO 11 U.S.C. § 101(27a), OR IN THE ALTERNATIVE FINDING APPOINTMENT OF A PATIENT CARE OMBUDSMAN PREMATURE (ECF 22)**

Andrew R. Vara, the United States Trustee for Regions 3 and 9 (U.S. Trustee) moves this Court for an Order determining that Debtor is not a health care business as defined at 11 U.S.C. § 101(27A); or in the alternative, an Order finding the appointment of a Patient Care Ombudsman pursuant to 11 U.S.C. § 333 premature. The Court should, however, issue an order requiring Debtor to secure the building that contains patient records no later than five (5) days from the issuance of an order stating the same. A Memorandum in Support follows.

Dated: September 18, 2025        Andrew R. Vara
United States Trustee for Regions 3 and 9

 */s/ Edward H. Cahill*
Edward H. Cahill (0088985)
U.S. Department of Justice, Office of the U.S. Trustee
170 North High Street, Suite 200
Columbus, OH  43215
Telephone:  (614) 469-7413
Email:  edward.h.cahill@usdoj.gov
*Assistant United States Trustee*

## MEMORANDUM IN SUPPORT

### INTRODUCTION

This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334 and the General Order of Reference entered in this district. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding as defined in 28 U.S.C. § 157(b)(2).

### SUMMARY OF FACTS

The petitioning creditors (Creditors or Petitioning Creditors) in this involuntary case are three former employees with wage claims, Shawn Core, Kayla Kellogg, and Heather Shields. (Petition, ECF 1; Amended Petition, ECF 14; collectively Petitions). The initial petition was filed on August 28, 2025. (ECF 1).

**Interim Trustee**

The Petitioning Creditors first moved the Court to appoint an interim trustee as allowed by 11 U.S.C. § 303(g), which was granted less than 24 hours after the petition was filed. (Motion at ECF 2; Order Granting Motion at ECF 11). The United States Trustee appointed Christal L. Caudill as the Interim Chapter 7 Trustee. (Caudill or Trustee Caudill, ECF 19).

**Health Care Business Designation**

The Petitions each designate Debtor as a health care business, a term defined by 11 U.S.C. §101(27A). Consistent with this designation, the Court issued its Order to Show Cause Why A Patient-Care Ombudsman Should Not Be Appointed well within the statutory 30-day timeframe. (Show Cause Order, ECF 22). The Show Cause Order directed any party in interest who believed that the appointment of a Patient Care Ombudsman (PCO) was unnecessary to file a motion so stating on or before September 18, 2025. (Id.)

**Trustee Investigation**

Because the petition lacked any schedules, Trustee Caudill investigated the Debtor by speaking with its principal, former employees, and with attorneys for Debtor's known creditors. Her investigation revealed that:

- Debtor was (past tense) operating a hospital in Martin's Ferry, Ohio, known as East Ohio Regional Hospital;

- The hospital closed its doors and dismissed or terminated all but half a dozen or fewer employees on or about March 28, 2025;[1]
- The Debtor <u>does not</u> own the building that was formerly known as East Ohio Regional Hospital located at 90 North 4th Street, Martins Ferry Ohio (Building);
- The building is the subject of a foreclosure action by the Belmont County Treasurer for unpaid property taxes;
- The State of Ohio Department of Development has a first lien for approximately $10 million on the Debtor's assets, including accounts receivable and equipment;
- Cardinal Health has a second lien for approximately $400,000, also secured by accounts receivable and equipment;
- Belmont Savings Bank has a third lien of approximately $1.1. million, secured by a lien on only accounts receivables;
- The value of the accounts receivable and equipment is approximately $12 million;[2]
- Time limitations on billing state and private insurers for the accounts receivable are or have been reached, likely reducing the recoverable amounts to $2 million to $4 million;
- The Debtor does not appear to have assets easily convertible to cash or meaningful amounts of cash on hand; and
- The Building and Debtor are uninsured.

**Trustee Building Visit**

Trustee Caudill visited and inspected the Building on September 12, 2025.[3] She found that:

---

[1] *See*, https://wtov9.com/news/local/breaking-east-ohio-regional-hospital-closing.

[2] Caudill Declaration, p. 2, ¶ 8, included here as Attachment 1.

[3] Caudill Dec., p.1, ¶ 3.

- The Building has hundreds of windows, more than 27 doors, and was open and unsecured;[4]
- There is no power to the Building;[5]
- Several locations in the building appeared to store biowaste materials labeled as hazardous;[6]
- Patients' medical records are present in nearly every room in the Building, including
    - Several massive file rooms containing what appear to be recently created records,
    - A basement storage space with older records, both loose and in boxes,[7]
    - On and in employee desks and workstations throughout the Building;[8]
- Debtor maintained electronic patient records. The IT space was composed of multiple enterprise-level pieces of IT equipment that will require specialized skills and equipment to access and remove; and
- One of Debtor's employees had been tasked with carrying plastic jugs of gasoline through the lightless Building into the basement to fuel a portable gas-powered generator to run the IT equipment.

Trustee Caudill secured what doors she could and had the employee cease using the ad-hoc power setup due to the hazardous nature of running a gas-powered generator inside the Building. Trustee Caudill's out-of-pocket expenses for the inspection and to secure the facility were approximately $1,000.

---

[4] *Id*.

[5] *Id.*

[6] Caudill Dec. at ¶¶ 6–7.

[7] The basement storage area is extremely wet and humid and mold has taken over most visible surfaces.

[8] Caudill Dec. at ¶ 6. Although Caudill did not see any squatters in the building, she learned from a Debtor employee that there have been squatters removed from the property since Debtor caused the hospital to close.

4

## DISCUSSION

The appointment of a PCO is unnecessary because 11 U.S.C. §§ 101(27A) and 333(a)(1) contemplate an ongoing operation providing medical services to the public. Because the Debtor provides no services to anyone, a PCO is unnecessary. Moreover, appointing a PCO would be premature because the case is likely administratively insolvent, making dismissal likely. Appointing a PCO in a case that may be dismissed would result in duplicative, costly, and detrimental efforts to deal with the very real issues presented by unsecured patient records. Instead of directing the United States Trustee to appoint a PCO, the Court should issue an Order requiring Debtor to secure the facility no later than five (5) days from the entry of such Order and to report compliance back to the Court within that same period.

**A. The Court should not appoint a PCO because 11 U.S.C. § 101(27A) requires current healthcare operations, making 11 U.S.C. 333(a)(1) inapplicable to the Debtor's wind-down activities.**

Debtor <u>was</u> a health care business. 11 U.S.C. § 101(27A) reads:

> The term "health care business"—
>
> (A) Means any public or private entity (without regard to whether that entity is organized for profit or not for profit) that is primarily engaged in offering to the general public facilities and services for
>     (i) the diagnosis or treatment of injury, deformity, or disease; and
>     (ii) Surgical, drug treatment, psychiatric, or obstetric care;

There is no dispute that Debtor was a health care business before March of this year. Equally, there is no dispute that Debtor closed the Building and no longer "offer[s] to the general public facilities and services" for anything, including the "diagnosis or treatment of injury . . . surgical, drug treatment, psychiatric, or obstetric care."

The vast majority of cases discussing whether to appoint a PCO occur in Chapter 11 or Chapter 9 (municipal hospitals) cases because the debtors were operating entities who were actively providing patient care at filing.[9] .Of the scant Chapter 7 cases, *In re Banes* is on point

---

[9] *See, e.g., In re Coshocton County Memorial Hosp. Assoc.*, No. 16-51552 (AMK) (Bankr. N.D. Ohio July 22, 2016) ECF 29, p. 1 (declaring that it is an operating hospital); *In re Miss.*

5

with the facts in this case.[10] In *Banes*, debtor was a dentist seeking to wind down her practice.[11] Because BAPCPA was enacted relatively close in time (2005) to the decision (2006), the Court engaged in a thorough analysis of §101(27A) focusing on the degree of care provided to patients as it relates to the need to appoint a PCO under 11 U.S.C. § 333(a)(1).[12] In spite of that thorough, detailed textual analysis, the Court ultimately concluded that "even if Debtor's dental practice did provide direct and ongoing contact with patients that provided them with shelter and sustenance, <u>the Debtor is no longer engaged in the practice of dentistry and thus would not require a patient care ombudsman</u>."[13] Because Debtor here is no longer providing *any* services to the public, Debtor is not a "health care business." As a result, 11 U.S.C. § 333(a)(1) ("[i]f the debtor . . . is a health care business . . . .") does not apply to this Debtor.

**B. The Court should not appoint a PCO because doing so now would be premature.**

At this stage of the case, no order for relief has been entered, no 341 meeting of creditors has been held, and Debtor has not filed any schedules or required papers necessary to fully disclose the extent of assets, liabilities, and the state of its affairs. (ECF 1–27). Accordingly, there is ample uncertainty concerning the case's disposition. With limited information available, the case appears to be administratively insolvent. While there are no patients for a PCO to oversee, there are thousands of records presenting substantial privacy and patient care concerns. If the Court were to direct the United States Trustee to appoint a PCO now, there appears to be no way to pay that person to manage those records. Trustee Caudill has indicated that the sheer number of patient records is daunting. Collecting, cataloguing, warehousing, and ultimately making such records (paper and electronic)

---

*Maternal-Fetal Med., P.A.*, 2021 WL 1941627, at *2-4 (Bankr. S.D. Miss. Feb. 18, 2021)(operating obstetrics practice); *In re N. Shore Hematology-Oncology Assocs., P.C.*, 400 B.R. 7, 9(Bankr. E.D. N.Y. 2008) (operating five cancer treatment centers); *In re Alternate Family Care*, 377 B.R. 754, 756 (Bankr. S.D. Fla. 2007) (operating two group homes and three treatment facilities providing pediatric psychiatric care); *In re Saber*, 369 B.R. 631, 638 (Bankr. D. Colo. 2007) (individual 11 for physician providing cosmetic surgery services to patients).

[10] *In Re Banes*, 355 B.R. 532 (Bankr. M.D. N.C. 2006).

[11] *Id.* at 533.

[12] *Id.* at 534–35.

[13] *Id.* at 535, emphasis supplied.

available to patients who require them for ongoing care is a massive job that will require a financial outlay of ate least five figures. Absent a court-ordered source of funding, no PCO would accept such an appointment.[14]

Additionally, if the Court later finds this case to be administratively insolvent, dismissal is the correct remedy. A dismissal would discharge any PCO from their duties making their effort nugatory at best and damaging at worst considering the inability to compensate a PCO for his or her efforts.[15] Dismissal would also require a transfer of custody, rendering any effort to manage patient records duplicative and wasteful considering the tentative nature of this case. If new facts come to light, or if circumstances change, the Court should revisit the issue. On the facts currently known, directing the United States Trustee to appoint a PCO would be premature.

**C. The Court should enter an order requiring Debtor to secure the Building and report the same to the Court no later than five (5) days from the date of entry.**

While appointment of a PCO is unnecessary, there is an exigent need to address the security of patient records. Trustee Caudill and the United States Trustee reviewed her findings and ultimately concluded that Debtor is in the best position to ensure that the records are safe and secure. Debtor's principal and the Building's owner are the same person. Debtor knowingly purchased the business, knowingly took custody of existing records and knowingly created new records during the time the hospital was open. Finally, Debtor must use its patient records to bill for services provided. No other entity involved in this case and subject to the Court's jurisdiction is better positioned to secure the records.

The need to secure the records is exigent. The Building has been open and accessible presumably since operations ceased nearly six months ago. While Trustee Caudill engaged professional help to secure what access and egress points she could, there was evidence of non-employee activity in the Building.[16] As time goes on, and the weather gets colder, it's conceivable that the incentives to gain access to the Building will only increase. And with the lack of utilities, fire risk increases also. While the United States Trustee is prepared to discuss

---

[14] *See* 11 U.S.C. § 330(a)(1), identifying a PCO appointed under § 333 as a person entitled to compensation on application and order.

[15] *Id.*

[16] Caudill Dec. at ¶ 3.

the precise nature of securing the Building at the scheduled hearing, the Court should at a minimum order the building secured as soon as practicable, which the United States Trustee believes is five (5) days from the entry of any order.

### CONCLUSION

WHEREFORE, the U.S. Trustee requests that the Court enter an Order that Debtor is not a health care business, or in the alternative, that an Order that appointment of a PCO pursuant to 11 U.S.C. §333, and for any other relief the Court deems fair and equitable.

Dated: September 18, 2025
Andrew R. Vara
United States Trustee for Regions 3 and 9

 */s/ Edward H. Cahill*
Edward H. Cahill (0088985)
U.S. Department of Justice, Office of the U.S. Trustee
170 North High Street, Suite 200
Columbus, OH  43215
Telephone:  (614) 469-7413
Email:  edward.h.cahill@usdoj.gov
*Assistant United States Trustee*

**Attachment 1**
**DECLARATION OF CHRISTAL L. CAUDILL**

Christal L. Caudill states as follows:

1. I am the appointed Interim Trustee in the East Ohio Hospital, LLC Chapter 7 bankruptcy case number 25-53781.

2. On September 8, 2025, I contacted Paul Andreozzi, a local locksmith, to visit East Ohio Hospital (the "Hospital") located at 90 North 4th Street, Martins Ferry, Ohio, to verify the building was secure and, if not, to provide me with a quote to secure it. Upon arriving at the Hospital, Mr. Andreozzi called to inform me that several doors were unlocked, and one door was propped open with extension cords running to a generator located in the basement. Mr. Andreozzi also noted that there appeared to be no power or working lights in the Hospital. At my request, Mr. Andreozzi secured the Hospital doors as best he could.

3. On Friday, September 12, 2025, I visited the Hospital. I confirmed that there were no patients, and the facility was without electricity. The building has approximately 27 doors, some of which are glass and cannot be rekeyed. I noticed that an internal glass door was broken and that someone had ransacked a room containing syringes and, at one point, held controlled substances.

4. The Hospital has three stories, not including the basement and spans over 200,000 square feet. It consists of an emergency room, hospital, surgery center, blood donation center, physical therapy center, and medical offices.

5. During my visit, I observed patient files lying on desks, as well as on copy and facsimile machines. There were also files stored in large patient record filing cabinets on all levels of the building, plus a significant number of boxes of stored files in two separate rooms in the basement. I estimate that the Hospital contains thousands of patient paper files throughout the building.

6. The Hospital is fully equipped with patient beds, medical inventory, vials of unknown liquids, and equipment. At first glance, it appears ready to be open for business. However, the Hospital has significant mold on several levels, especially in the basement, where most of the patient files are stored.

7. I also observed several locked rooms that were marked for biohazard materials, as well as possible biohazard materials outside the facility.

8. I have reviewed several filed UCCs, and multiple creditors hold security interests in the equipment in the Hospital, as well as the accounts receivable. To the best of my knowledge, the total amount due to these secured creditors exceeds $12,000,000.00.

**I declare under penalty of perjury that the foregoing is true and correct (28 U.S.C. 1746).**


Date: September 18, 2025          */s/ Christal L. Caudill*
                                  Christal L. Caudill

**NOTICE OF UNITED STATES TRUSTEE'S MOTION FOR ORDER DETERMINING DEBTOR IS NOT A HEALTH CARE BUSINESS PURSUANT TO 11 U.S.C. § 101(27a), OR IN THE ALTERNATIVE FINDING APPOINTMENT OF A PATIENT CARE OMBUDSMAN PREMATURE (ECF 22)**

NOTICE IS HEREBY GIVEN that the United States Trustee has filed a motion to determine excessiveness and unreasonableness of attorney fee in the above-entitled case.

**Your rights may be affected.** You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one.

If you do not want the court to grant the relief sought in the motion/objection, then on or **before the hearing set for Monday, September 22, 2025 at 10:00 am,** you must file with the court a response explaining your position by mailing your response by regular U.S. Mail to Clerk of the Court at the United States Bankruptcy Court, 170 North High Street, Columbus, OH 43215, OR your attorney must file a response using the court's ECF System, or you may appear at the hearing and submit your objections at the hearing.

The court must receive any written response on or before the date above. You must also send a copy of your written response either by 1) the court's ECF System or by 2) regular U.S. Mail to Edward Cahill at the United States Trustee Office, 170 North High Street, Suite 200, Columbus, Ohio 43215.

If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion/objection and may enter an order granting that relief without further notice or hearing.

Dated: September 18, 2025

Andrew R. Vara
United States Trustee for Regions 3 and 9

*/s/ Edward H. Cahill*
Edward H. Cahill (0088985)
U.S. Department of Justice, Office of the U.S. Trustee
170 North High Street, Suite 200
Columbus, OH 43215
Telephone: (614) 469-7413
Email: edward.h.cahill@usdoj.gov
*Assistant United States Trustee*

**CERTIFICATE OF SERVICE**

    I certify that on or about September 18, 2025, a copy of the foregoing UNITED STATES TRUSTEE'S MOTION FOR ORDER DETERMINING DEBTOR IS NOT A HEALTH CARE BUSINESS PURSUANT TO 11 U.S.C. § 101(27a), OR IN THE ALTERNATIVE, FINDING APPOINTMENT OF A PATIENT CARE OMBUDSMAN PREMATURE (ECF 22)  AND MEMORANDUM IN SUPPORT was served (i) electronically on the date of filing through the court's ECF System on all ECF participants registered in this case at the email address registered with the court and (ii) on the following by ordinary U.S. Mail addressed to:

East Ohio Hospital LLC
90 North 4th Street
Martins Ferry, OH 43935

                                                                   /s/ *Edward H. Cahill*
                                                                   Edward H. Cahill